UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DEVONTAE C. HARRIS,

    Plaintiff,

v.       CAUSE NO. 3:20-CV-420-DRL-MGG

GARY LEWIS *et al.*,

    Defendants.

OPINION & ORDER

Devontae C. Harris, a prisoner without a lawyer, has sued twelve individuals because he is unhappy with the conditions he endured while on various hunger strikes and with the medical care he received when he became unconscious on a hunger strike. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Still, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against an immune defendant.

On January 19, 2020, Mr. Harris was on a hunger strike and was placed in a cell without a sink, toilet, or bed frame. He was forced to sleep on the floor that night, and he received several insect bites. The Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008). The Constitution doesn't mandate "comfortable

prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Conditions that merely cause inconveniences and discomfort or make confinement unpleasant aren't constitutional violations. *Adams v. Pate*, 445 F.2d 105, 108-109 (7th Cir. 1971).

Here, Mr. Harris alleges that he was housed in a cell that lacked the amenities of a sink, toilet, and bed frame on January 19, 2020—a single day. He seemingly wasn't deprived of regular access to a bathroom or water. He was bitten by an unidentified insect on this one night. The conditions he describes may have been unpleasant, but they aren't constitutional violations. Even so, he could not proceed because he has not identified which defendant or defendants were responsible for these conditions. "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). Thus, these allegations don't state a claim.

On February 12, 2020, Mr. Harris was again on a hunger strike. Sergeant Marty Sexton and Sergeant Freyek opened the Westville Control Unit garage door and aimed a fan at his cell. This was allegedly done at Captain Gary Lewis's direction. Mr. Harris became so cold that he gave up his hunger strike. Often, hunger strikes are a form of protest, and they enjoy First Amendment protections, albeit not without limits. *Birdo v. Gomez*, No. 13-CV-6864, 2016 WL 4011227, 17 (N.D. Ill. July 27, 2016), *on reconsideration in part sub nom. Birdo v. Dave Gomez*, 214 F. Supp. 3d 709 (N.D. Ill. 2016). Here, it is unclear exactly why Mr. Harris was on a hunger strike, but this was one day of several, and the words hunger strike plausibly presuppose that he was protesting something of First Amendment proportions.

"To prevail on his First Amendment retaliation claim, [Mr. Harris] must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (quotation marks and citations omitted). Aiming fans blowing cold air at Mr. Harris's cell in February is the kind of deprivation that would likely deter him from continuing to engage in his hunger strike, so he may proceed on this claim against Sergeant Marty Sexton, Sergeant Freyek, and Captain Gary Lewis.

On March 19, 2020, Mr. Harris was again on a hunger strike. An offender had been assigned to watch his movements. This offender was asked to step out, and Sergeant Jones then turned on a large fan for hours (it is unclear how many, as his handwriting is not legible – perhaps 2, or 21 – the court cannot decipher it). Mr. Harris alleges that this resulted in permanent numbness in his hands and feet. As explained above, this states a claim, and Mr. Harris will be permitted to proceed against Sergeant Jones for this incident.

The next day, Mr. Harris continued his hunger strike, refusing to either eat or drink. He told his suicide companion that he was feeling lightheaded, and his companion told Sergeant James Henrich. Sergeant Henrich stated that he would be hydrated if he drank water. Minutes later, Mr. Harris fainted and hit his head on concrete. He was unresponsive, and the suicide companion told Sergeant Henrich, Sergeant Marty Sexton, Correctional Officer Davis, and Sergeant Freyek that Mr. Harris had fainted and hit his

head and was unresponsive. Nurse Purdue was called to check on Mr. Harris and concluded that he was just dehydrated. She instructed the officers to put Mr. Harris back on the floor, face down, while he was unresponsive. He remained like that for approximately two hours before he awoke.

At some point, the refusal to eat (or drink) can result in serious injury or death, and prison staff have a "right and a duty to step in and force an inmate to take nourishment." *Owens v. Hinsley*, 635 F.3d 950, 955 (7th Cir. 2011). An inmate may state a claim if he suffers some injury as a result of the failure to intervene; however, "if weight loss and temporary discomfort are the only consequences of refusing to eat," then the inmate has no Eighth Amendment claim. *Owens*, 635 F.3d at 955; *see also Freeman v. Berge*, 441 F.3d 543, 547 (7th Cir. 2006). Here, Mr. Harris alleges that, when Sergeant Henrich learned that Mr. Harris was lightheaded, he took no action to obtain medical care for him. He further alleges that, when he fainted due to dehydration soon thereafter, Nurse Purdue did nothing other than take his temperature and tell correctional staff to lay him back down while still unconscious. Giving Mr. Harris the inferences to which he is entitled at this stage, he has alleged sufficient facts to proceed against Sergeant Henrich and Nurse Purdue.

For these reasons, the court:

(1) GRANTS Devontae C. Harris leave to proceed against Sergeant Marty Sexton, Sergeant Freyek, and Captain Gary Lewis in their individual capacities for compensatory and punitive damages for allegedly using a fan to blow cold air toward his cell to

dissuade him from continuing his hunger strike on February 12, 2020, in violation of the First Amendment;

(2) GRANTS Devontae C. Harris leave to proceed against Sergeant Jones in her individual capacity for compensatory and punitive damages for allegedly using a fan to blow cold air toward his cell to dissuade him from continuing his hunger strike on March 19, 2020, in violation of the First Amendment;

(3) GRANTS Devontae C. Harris leave to proceed against Sergeant Henrich in his individual capacity for compensatory and punitive damages for allegedly failing to obtain medical care for Mr. Harris on March 20, 2020, when Mr. Harris became lightheaded during his hunger strike, in violation of the Eighth Amendment;

(4) GRANTS Devontae C. Harris leave to proceed against Nurse Purdue in her individual capacity for compensatory and punitive damages for allegedly failing to provide constitutionally adequate medical care for Mr. Harris on March 20, 2020, when Mr. Harris fainted during his hunger strike, in violation of the Eighth Amendment;

(5) DISMISSES all other claims;

(6) DISMISSES UTM John Salyer, Lt. Lester Jones, Lt. Kenneth Reed, Medical Records Ms. Monnier, and Ofc. Davis;

(7) DIRECTS the clerk to request Waiver of Service from (and if necessary, the United States Marshals Service to serve process on) on Captain Gary Lewis, Sgt. James Henrich, Sgt. Marty Sexton, Sgt. Ms. Jones, and Sgt. Freyek at the Indiana Department of Correction with a copy of this order and the complaint (ECF 1), pursuant to 28 U.S.C. § 1915(d);

(8) DIRECTS the clerk to request Waiver of Service from (and if necessary, the United States Marshals Service to serve process on) Nurse Purdue at Wexford of Indiana, LLC, with a copy of this order and the complaint (ECF 1), pursuant to 28 U.S.C. § 1915(d);

(9) ORDERS Wexford of Indiana, LLC, and the Indiana Department of Correction to provide the United States Marshal Service with the full name, date of birth, social security number, last employment date, work location, and last known home address of any defendant that does not waive service, if they have such information; and

(10) ORDERS, pursuant to 42 U.S.C. § 1997e(g)(2), Captain Gary Lewis, Sgt. James Henrich, Sgt. Marty Sexton, Sgt. Ms. Jones, Sgt. Freyek, and Nurse Purdue to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED.

November 19, 2020                      *s/ Damon R. Leichty*
                                                       Judge, United States District Court